UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA BANKS-REED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 23-cv-04200-TSH <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 41 |

## I. INTRODUCTION

Plaintiffs, members of the Hebrew Cultural Community, sue the United States of America for "inhumane treatment and discrimination . . . which has been endorsed by the [government's] actions and omissions that encourage the harmful rhetoric inherited." Compl. ¶ 3, ECF No. 1. They seek "reparations to compensate for the lasting effects arising from the inaction of the Government." *Id.* ¶ 2. Pending before the Court is the government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6). ECF No. 41. Plaintiffs submitted an opposition[1] (ECF No. 44-3), and the government filed a Reply (ECF No. 44). The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 11, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court finds it lacks jurisdiction over Plaintiffs' claims and therefore **GRANTS** the government's motion under Rule 12(b)(1).[2]

---

[1] As discussed below, Plaintiffs did not file their opposition but instead served it on the government.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 3, 6-27, 29-30, 40.

## II. BACKGROUND

On August 17, 2023, Plaintiffs filed the instant complaint titled "Petition for Reparations," seeking financial compensation in the form of $44 million dollars per family, as well as "funds to introduce the language of the Petitioners to the education system;" and an "expeditious start on legislation . . . provid[ing] for non-discrimination of African Americans."  Compl. ¶¶ 3, 56-58. Plaintiffs allege that continued racial discrimination based on the enslavement of African Americans and the government's "failure to pay reparations to descendants of the Africans captured and forced to be slaved" has resulted in deprivation of their "right to religion, language, and culture."  *Id.*  ¶¶ 2, 6.

The complaint contains no factual allegations specifically connecting the alleged injuries to the Plaintiffs themselves.  Instead, the complaint generally contains background information regarding notable First Amendment litigation (*id.* ¶¶ 14-19); explanations of the values of Confucianism and Judaism (*id.* ¶¶ 21-23); summaries of scholarly works relating to heritage and culture (*id.* ¶¶ 25-27); history relating to the passage of the Fifteenth and Nineteenth Amendments and the history of racism and sexism against African American women (*id.* ¶¶ 42-43); summaries of other historical events relating to the fight for equal rights (*id.* ¶¶ 45-50) (including references to the Tulsa Race Riot; the field order issued by Union General William Tecumseh Sherman during the Civil War; the civil rights movement of the 1950s and 1960s; and unsuccessful legislative efforts for reparations); and explanations of the workings of the slave economy (*id.* ¶¶ 51-52).  Other paragraphs mention Plaintiffs, but those references are vague and lack factual allegations of injury specific to Plaintiffs themselves.  Rather, those paragraphs include references to statistics and language about experiences which apply to African Americans generally.  *See, e.g., id.* ¶¶ 24, 26-30, 32-41, 44, 53-54.

The government filed the present motion on April 8, 2024, seeking dismissal on several grounds.  First, the government argues Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because: (1) it contains no allegation that Plaintiffs complied with the jurisdictional requirement of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a); (2) the alleged injuries accrued before the FTCA's operative date; (3) insofar

2

1  as Plaintiffs' claims may fall outside of the FTCA, they are barred by the doctrine of sovereign

2  immunity; and (4) the complaint fails to establish Article III standing because Plaintiffs alleged

3  injury is not particularized.  Mot. at 2.  The government also argues Plaintiffs fail to state a claim

4  upon which relief may be granted pursuant to Rule 12(b)(6) because: (1) the alleged tort claims,

5  insofar as they are even alleged, are time barred pursuant to 28 U.S.C. § 2401(b); and (2) the entire

6  civil action is time barred pursuant to 28 U.S.C. § 2401(a).  Mot. at 2-3.

7         Under Civil Local Rule 7-3(a), any opposition to the government's motion was due by

8  April 22.  As Plaintiffs did not file an opposition (and have not otherwise made any appearance

9  since the government filed its motion), the Court ordered them to show cause why this case should

10  not be dismissed for failure to prosecute and failure to comply with court deadlines.  ECF No. 43.

11  The Court directed Plaintiffs to file a declaration by May 15, 2024 and simultaneously file either

12  an opposition in compliance with Civil Local Rule 7-3(a) or a statement of nonopposition in

13  compliance with Local Rule 7-3(b).  The Court warned Plaintiffs that "failure to file a written

14  response will be deemed an admission that you do not intend to prosecute, and this case will likely

15  be dismissed.  Thus, it is imperative the Court receive a written response by the deadline above."

16  If Plaintiffs filed an opposition, the Court directed the government to file any reply by May 22.

17         Although Plaintiffs did not file an opposition by May 15, they did serve one on the

18  government, along with a declaration regarding service.  Specifically, on May 22, 2024, the

19  government filed a reply brief.  ECF No. 44.  As part of its reply, the government states that on

20  May 15, 2024, the United States Attorney's Office received via mail a "Declaration of Plaintiff

21  Yolanda Banks-Reed Concerning Non-Receipt of the Government's Filings" and "Memorandum

22  of Points and Authorities in Opposition to the United States of America's Motion to Dismiss."  *Id.*

23  at 1; *see also* Samples Decl. ¶¶ 2-5, ECF No. 44-1, *id.*, Ex. 1 ("Declaration of Plaintiff Yolanda

24  Banks-Reed[3] Concerning Non-Receipt of the Government's Filings"), ECF No. 44-2; Ex. 2

25  ("Memorandum of Points and Authorities in Opposition to the United States of America's Motion

26  to Dismiss").  In her declaration, Reed states Plaintiffs "never received any paperwork from the

---

[3] Yolanda Banks-Reed is one of the named plaintiffs and the only one for which the Court (and the government) has an address for service.

3

1  U.S. Attorney's office through the mail" and that Plaintiffs "do not want this case to be dismissed
2  and do not want the Court to think that Plaintiffs do not intend to prosecute the action." Banks-
3  Reed Decl. ¶¶ 2-3. Banks states Plaintiffs "would need more time to prepare an appropriate
4  opposition as I had limited time to submit my brief due to the lack of receipt of the U.S.
5  Attorney's Office's mailing." *Id.* ¶ 4. However, Banks-Reed states she did receive the Court's
6  order to show cause, *id.* ¶ 1, which provided Plaintiffs with an additional two weeks to file an
7  opposition. Regardless, for the reasons stated below, the Court finds it lacks jurisdiction over
8  Plaintiffs' claims, and, as they tacitly admit in their opposition, they are unable to overcome this
9  jurisdictional barrier.

### III.   LEGAL STANDARD

Federal district courts are courts of limited jurisdiction: "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

4

1  jurisdiction").

2      Dismissal of a complaint without leave to amend should only be granted where the
3  jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316
4  F.3d 1048, 1052 (9th Cir. 2003).

### IV.  DISCUSSION

#### A.  Statute of Limitations

    As a preliminary matter, to the extent Plaintiffs seek reparations from the United States for slavery, this claim is time barred. 28 U.S.C. § 2401(a) provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." A right of action normally accrues at the time the underlying events occurred. *Powell v. United States*, 1994 WL 16180202, at *1 (N.D. Cal. Jun. 20, 1994). Here, the underlying events causing the harms alleged in Plaintiffs' complaint transpired more than six years ago. *See, e.g.,* Compl. ¶¶ 32 ("The Original Hebrews were forcefully removed . . . in 1619."), 35 ("African Americans were stripped of their heritage . . . in the fifteenth and sixteenth centuries."), 55 ("Slavery, which admittedly happened centuries ago and has since then been abolished, has had lasting effects on the descendants . . . . [T]he [United States] continues to contribute to the harm[] [to] African Americans by not compensating them for their suffering."). As such, Plaintiffs' claims are barred by the statute of limitations. *Powell*, 1994 WL 16180202, at *1 (finding plaintiff's claims against the United States seeking reparations for harms suffered because of slavery barred by statute of limitations); *Davis v. United States*, 2012 WL 1836310, at *2 (N.D. Cal. May 21, 2012), *report and recommendation adopted*, 2012 WL 2884806 (N.D. Cal. July 12, 2012) (finding plaintiff's claims for reparations from United States for condoning slavery time barred).

#### B.  Sovereign Immunity

    A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under

1    Rule 12(b)(1).  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Sierra Club v.*

2    *Whitman*, 268 F.3d 898, 905-06 (9th Cir. 2001).

### 1. Federal Tort Claims Act

Although Plaintiffs have not explicitly stated any causes of action in their complaint, they clarify in their opposition that they seek to bring a tort claim.  Opp'n at 2.  As such, any claim must arise under the FTCA because they bring a civil action seeking money damages for injury allegedly caused by the United States.  *See* Compl. ¶¶ 3 (referencing 19 families), 56 (seeking a total of $836 million in "[f]inancial compensation to the descendants of the African Hebrews who were held in captivity amounting to [f]orty-four (44) million per family"); *see also* Opp'n at 2 ("The Government's motion concedes that the Federal Tort Claims Act operates as a waiver of sovereign immunity from suits for wrongful acts of government employees.  That describes the plaintiffs' claims and suggests this Court does have jurisdiction.").

The FTCA authorizes civil suits against the United States "for money damages . . . for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act . . . of the Government."  28 U.S.C. § 1346(b).  It "constitutes a limited waiver of that immunity."  *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 366 (9th Cir. 1986), *cert. denied sub nom., Cty. of Mariposa v. United States*, 481 U.S. 1014 (1987); *see also Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016) ("The Act operates as a limited waiver of sovereign immunity from suits for negligent or wrongful acts of government employees").  The FTCA is the "exclusive jurisdictional basis for tort damage type lawsuits against the United States."  *Wade v. United States*, 2007 WL 840098, at *1 (N.D. Cal. Mar. 16, 2007); *see also Ruderman v. Soc. Sec. Admin.*, 1994 WL 184632, at *1 (N.D. Cal. Apr. 22, 1994) (The FTCA "is the exclusive remedy for tort claims against the federal government and its agencies.").

As a preliminary matter, there is no indication Plaintiffs filed any administrative claim, which is a prerequisite to a suit under the FTCA.  *See* 28 U.S.C. § 2675(a) ("[T]he claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency.").  "If [] plaintiff[s] do[] not exhaust administrative remedies, [plaintiffs' FTCA] suit is barred."  *Nguyen v. United States*, 2022 WL 822435, at *2 (N.D. Cal.

Jan. 11, 2022) (citation omitted). Plaintiffs tacitly admit they did not file any administrative claim. *See* Opp'n at 2 ("The Government's motion fails to identify what type of administrative claim could have been made or what Federal agency is the 'appropriate Federal agency' that would have received and considered this claim. The reason the Government doesn't identify these things is because they don't exist; there is no administrative claim for reparations for African Americans and there is no specific Federal agency that is designated to receive and consider such a claim."). Thus, absent any prior administrative claim seeking money damages for the same injuries as alleged in the complaint, the Court does not have jurisdiction over their claims arising under the FTCA. *See* 28 U.S.C. § 2675(a) ("action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency"); *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992) (Plaintiffs cannot "commence proceedings in court against the United States without first filing [their] claim with an appropriate federal agency . . . . [T]his 'claim requirement of section 2675 is jurisdictional in nature and may not be waived.'") (internal citations omitted)). Failure to comply destroys subject matter jurisdiction over the entire cause of action. *See Caidin v. United States*, 564 F.2d 284, 286 (9th Cir. 1977) (failure to file a proper administrative claim destroys subject matter jurisdiction over the entire cause of action). Accordingly, dismissal is appropriate for failure to comply with the jurisdictional prerequisite of 28 U.S.C. § 2675(a). *See also Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995) ("[A]t the end of the day no jurisdiction would lie, and no claim for relief would be stated, even were the complaint to be amended along the lines proposed and even if an administrative claim could be filed with some government agency as required by § 2675(a) of the FTCA").

Additionally, the waiver of sovereign immunity in tort actions against the government in the FTCA is limited to claims accruing on and after January 1, 1945. 28 U.S.C. § 1346(b); *see also Cato*, 70 F.3d at 1106. Specifically, § 1346(b) provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the

7

>scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

As noted above, the injuries alleged in Plaintiffs' complaint accrued long before 1945 — before the FTCA created any limited waiver of sovereign immunity. *See, e.g.,* Compl. ¶¶ 32, 35, 55. As the Ninth Circuit explained in *Cato*, "claims arising out of the fact of slavery . . . and other offenses to [plaintiff's] ancestors that occurred prior to 1945 or were not pursued within two years of their accrual, fall outside the FTCA's limited waiver of sovereign immunity." *Cato*, 70 F.3d at 1107; *see also Cavness v. United States*, 2016 WL 6822072, at *1 (N.D. Cal. Nov. 18, 2016) ("Moreover, the claim arises from actions or omissions of the framers of the Constitution that occurred well before FTCA's operative date of January 1, 1945) (citing *Cato*, 70 F.3d at 1107). Accordingly, by the express terms of the FTCA, there is no waiver of sovereign immunity for the injuries alleged in Plaintiffs' complaint.

Plaintiffs argue their injuries based on these "wrongful acts" and "historical wrongful actions" did not accrue until the "[P]laintiffs grew to adulthood." Opp'n at 3. However, a right of action "accrues at the time the underlying events occurred." *Powell*, 1994 WL 16180202, at *1; *see also Davis*, 2012 WL 1836310, at *2 (citations omitted) (dismissing claims pursuant to § 2401(a) seeking reparations from the United States for condoning slavery); *Jenkins v. United States*, 2021 WL 5826467, at *1 (E.D. Cal. Dec. 8, 2021), *report and recommendation adopted*, 2022 WL 159032 (E.D. Cal. Jan. 18, 2022) (dismissing a claim for slavery reparations because they were barred by 28 U.S.C. § 2401(a)). As explained in *Cato*, claims arising out of slavery occurred before 1945 and are therefore outside the scope of the FTCA. *Cato*, 70 F.3d at 1107 ("[C]laims arising out of the fact of slavery . . . and other offenses to [plaintiffs'] ancestors that occurred prior to 1945 or were not pursued within two years of their accrual, fall outside the FTCA's limited waiver of sovereign immunity."); *see also Cavness*, 2016 WL 6822072, at *1 (citing *Cato*, 70 F.3d at 1107).

Plaintiffs also argue they have suffered particularized injury. Opp'n at 3. They reference paragraph 54 of their complaint, they allege:

>Petitioners face a unique set of challenges that stem from a complex

8

> interplay of social, cultural, and historical factors. are often stereotyped and stigmatized, which can lead to their isolation from mainstream society. This can result in a sense of helplessness and despair, as well as limited access to communal networks of mutual assistance. These challenges are exacerbated by the frequent public derision of their perceived criminality, sexual profligacy, and intellectual inadequacy. African Americans often experience a pariah status that makes it difficult for them to overcome the challenges they face. Addressing these issues requires a comprehensive approach that recognizes the complex nature of the problem and seeks to address both the economic and social factors that contribute to it.

Compl. ¶ 54. However, this argument, that the alleged injuries apply to "a greater class of impacted African Americans" *see* Opp'n at 3, has already been addressed by the Ninth Circuit. *See Cato*, 70 F.3d at 1109-10 (finding that plaintiffs do not "have standing to litigate claims based on the stigmatizing injury to all African Americans caused by racial discrimination.") (citing *Allen v. Wright*, 468 U.S. 737, 755 (1984) ("Neither do they have standing to litigate their claims based on the stigmatizing injury often caused by racial discrimination."), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

The Court recognizes Plaintiffs' argument that there is no administrative claim for reparations for African Americans. Opp'n at 2. However, given the limitations on this Court's power, at bottom the injustice of which Plaintiffs complain is for the legislature rather than this Court:

> Discrimination and bigotry of any type is intolerable, and the enslavement of Africans by this Country is inexcusable. This Court, however, is unable to identify any legally cognizable basis upon which plaintiff's claims may proceed against the United States. While plaintiff may be justified in seeking redress for past and present injustices, it is not within the jurisdiction of this Court to grant the requested relief. The legislature, rather than the judiciary, is the appropriate forum for plaintiff's grievances.

*Cato*, 70 F.3d at 1105. As such, the Court finds dismissal without leave to amend is appropriate. *See id.* at 1110 ("[A]t the end of the day no jurisdiction would lie, and no claim for relief would be stated, even were the complaint to be amended along the lines proposed and even if an administrative claim could be filed with some government agency as required by § 2675(a) of the FTCA.").

9

### 2. Other Causes of Action

Construing their complaint liberally, Plaintiffs may seek to bring claims arising out of the First Amendment, *Bivens*,[4] and 42 U.S.C. § 1983.[5] *See* Compl. ¶¶ 2, 6-10, 12-14, 17, 19, 24, 26, 31-32, 36 (references to *Bivens*, 42 U.S.C. § 1983, and constitutional rights including the First Amendment). However, the United States has not waived its sovereign immunity for claims pursuant to *Bivens*. *See Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States because the United States has not waived sovereign immunity with respect to [Constitutional damage claims].") (citation omitted)); *see also DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019) (Because "[s]overeign immunity is jurisdictional in nature," "there is no subject matter jurisdiction unless sovereign immunity is waived.") (internal quotation marks and citation omitted)); *Ibrahim v. Dep't of Homeland Security*, 538 F.3d 1250, 1257 (9th Cir. 2008) ("[N]o *Bivens*-like cause of action is available against federal agencies or federal agents sued in their official capacities.") (citations omitted)). Accordingly, Plaintiffs may not raise a federal civil right claim pursuant to *Bivens*, and dismissal of any such claim is appropriate. *See Locke v. United States*, 2021 WL 1255195, at *2 (C.D. Cal. Feb. 19, 2021) (dismissing *Bivens* claim against the United States pursuant to Rule 12(b)(1)).

The Court also lacks subject matter jurisdiction over "any First Amendment claim . . . directed against the United States [because] the United States has not waived its sovereign immunity for standalone constitutional claims." *Greek v. United States*, 2021 WL 242771, at *7 (E.D. Cal. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 1118608 (E.D. Cal. Mar. 24, 2021) (citing *Meyer*, 510 U.S. at 484–85); *see also Boyd v. United States*, 2017 WL 1133512, at *7 (N.D. Cal. Mar. 27, 2017), *aff'd sub nom. Boyd v. United States Dep't of the Treasury*, 713 F. App'x 648 (9th Cir. 2018) (finding "cause of action relating to the First

---

[4] In *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), the Supreme Court recognized an implied right of action against federal officers for constitutional violations.
[5] The Civil Rights Act, codified at 42 U.S.C. § 1983, provides: "Every person who, under color of [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured[.]"

10

Amendment . . . cannot stand" because "[t]he United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction") (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).

As to any potential § 1983 claim, the statute provides a cause of action against persons acting under State law, which, "by its very terms . . . precludes liability in federal government actors." *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); *see Ibrahim*, 538 F.3d at 1257 ("Section 1983 only provides a remedy against persons acting under color of state law").

## V. CONCLUSION

For the reasons stated above, the Court finds Plaintiffs claims are barred by the statute of limitations, by operation of the FTCA, or because the United States has not otherwise waived sovereign immunity. Accordingly, the Court **GRANTS** the government's motion to dismiss. As leave to amend would be futile, Plaintiffs' complaint is **DISMISSED WITHOUT LEAVE TO AMEND**. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 17, 2024

THOMAS S. HIXSON
United States Magistrate Judge